```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                     FORT MYERS DIVISION
```

KEE K. KIM, as Personal
Representative of the Estate of Gee
B. Sunn, Deceased, and as Natural
Guardian for GNS and FS,

                Plaintiff,

vs.                      Case No. 2:09-cv-667-FtM-29DNF

GEICO CASUALTY COMPANY,

                Defendant.
_____

## OPINION AND ORDER

This matter comes before the Court on the parties' cross motions for summary judgment. This is a third party insurance bad faith action in which plaintiff asserts that GEICO acted in bad faith in handling a claim brought by plaintiff against GEICO's insured. On December 22, 2010, both parties filed motions for summary judgment (Docs. ## 40, 41). On January 18, 2011, GEICO filed its response (Doc. #45) to plaintiff's motion. On January 17, 2011, plaintiff filed her response to GEICO's motion (Doc. #44) and with the court's permission, GEICO filed a reply (Doc. #50) on February 22, 2010.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if

the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys R Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010)(citation omitted). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "[i]f reasonable minds might differ on the inferences arising from

undisputed facts, then the court should deny summary judgment." St. Charles Foods Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1315 (11th Cir. 2007).

**II.**

Plaintiff is the personal representative of Gee B. Sunn (Sunn), the victim of a motor vehicle accident caused by Polo R. Staber (Staber). The accident occurred on September 11, 2004 and resulted in the death of Sunn. At the time of the accident, Staber was insured by defendant Geico Casualty Company (GEICO) under a policy of liability insurance. The policy provided bodily injury coverage in the amount of $10,000 per person/$20,000 per occurrence and property damage coverage in the amount of $10,000. (Doc. #40-1.)

GEICO learned of the accident on the day that it occurred. (Doc. #40-3.) On September 13, 2004, the first business day following the accident, GEICO requested the police report from the

Florida Highway Patrol and attempted to contact Staber, but was unable to reach him. (Id.) On September 15th, GEICO obtained a statement from Staber. Staber stated that he had been drinking prior to the accident, that he was charged with driving under the influence, and that there was one death resulting from the accident. Staber also informed GEICO that he had no other insurance. (Doc. #40-6.)

As a follow up to this conversation, GEICO sent a letter to Staber advising him that they would defend the suit against him at their expense, but that GEICO would only be able to indemnify him up to his policy limits. (Doc. #40-8.) GEICO also informed Staber that the damages arising from the accident could exceed his policy limits and warned him that he would be personally liable for such excess. (Id.) On September 17th, GEICO retained attorney Larry Ringers to represent Staber. Geico advised Ringers that it intended to tender Staber's full policy limit of $10,000 for bodily injury to Sunn's estate. (Doc. #40-9.)

On September 20, 2004, James Scarmozzino (Scarmozzino) faxed a letter to GEICO identifying himself as the attorney representing Sunn's estate in its bodily injury claim against Staber. In the letter, Scarmozzino requested insurance disclosures pursuant to Florida Statute section 627.4137 and stated "[a]dditionally, you and your insured are requested to reveal the name and coverage of each other known insurer." (Doc. #40-12.) Attached to the letter

were two forms prepared by Mr. Scarmozzino: the first form was titled "Disclosure of Insurance Policy Limits" and requested basic information from GEICO (e.g., the name of the insured and the policy limits for personal injury, property damage, medical expenses, etc.) and the second was an "Affidavit of No Other Insurance" which required Staber to declare that he had no other policies of insurance. (Id.)

GEICO responded to the letter the following day on September 21, 2004. GEICO did not fill out the forms attached to Scarmozzino's letter. Instead, after asking Staber whether he had any other insurance and learning that he did not, GEICO prepared its own form which included the disclosures required by Florida Statutes section 627.4137 and indicated "None Known" regarding other insurance. Along with the form, GEICO enclosed a check for $10,000 and a proposed release. (Docs. ## 40-13, 40-1.)

On September 30th, Scarmozzino replied with the following seven specific demands:

(1) $3,500 for the loss of Sunn's vehicle;
(2) loss of use damages in the amount of $20 per day;
(3) all available evidence of Staber's financial condition and assets;
(4) the names of all individuals who resided with Staber at the time of the accident and, if related, the make, model and vehicle identification numbers (VIN) of all vehicles owned by Staber's relatives;
(5) the name of the owner and VIN number of the trailer that Staber was towing at the time of the accident;
(6) full disclosures of insurance pursuant to section 627.4137 Florida Statutes; and
(7) the full policy limit of $10,000 for bodily injury damages.

Scarmozzino demanded that GEICO satisfy these conditions within twenty days. (Doc. #40-16.)

Six days later, on October 6, 2004, GEICO responded by satisfying all requests except number three (evidence of Staber's financial condition) and number four (the names of individuals residing with Staber and the VINs of their vehicles). GEICO indicated that they were working on obtaining that information. GEICO also stated that it felt that it had already satisfied conditions six and seven. (Doc. #40-19.) With respect to condition number six, GEICO stated, "An affidavit of coverage was sent to you in my certified letter dated September 21, 2004, along with our draft and proposed release, which will satisfy Section 627.4137, your condition #6, but in addition I have enclosed a Certified copy of Polo Staber's auto policy with GEICO Casualty under policy #1239409004." (Id.) With respect to condition number seven, GEICO had already tendered the $10,000 check for the policy limit.

On October 14, 2004, Scarmozzino sent a letter to GEICO acknowledging that he received GEICO's October 6th letter and requesting that Staber fill out a specific "Financial Affidavit" form prepared by Scarmozzino, which would identify Staber's assets. (Doc. #40-22.) Scarmozzino's letter also stated "Assuming all of our requests are met by October 20, 2004, including receipt of your

insured's statement as requested in my September 20, 2004, letter, we will be in a position to settle this case." (Id.)

On October 20, 2004, Ringers responded by sending Scarmozzino the completed financial affidavit that he requested and informing him that Staber lived alone at the time of the accident. (Doc. #40-24.) Ringers also stated, "[Please be advised that there was no statement taken of the insured." (Id.) Ringers closed the letter by stating that the insurer and insured had met the terms and conditions of Scarmozzino's demand letter and requested that his clients execute the release sent to them by GEICO.

Two days later, on October 22, 2004, Scarmozzino sent a letter to Ringers which stated, in relevant part:

> Clearly, in order for me to have properly represented my clients, I asked for and expected to receive documentation in the form of an affidavit or statement of your client, Mr. Staber, confirming whether there is any other coverage available. Because Geico and Mr. Staber have refused to provide that information, we have no knowledge as to whether there is additional coverage, such as an Umbrella Policy, or other insurance issued to another owner, or perhaps a principal or employer.
>
> In any event, it appears that Mr. Staber does not want us to discover the identity of other liable parties or policies. Because of his refusal to provide it as requested in my two previous correspondences, we have no choice but to file a lawsuit and we will request that information through formal discovery.

(Doc. #40-26.) Scarmozzino returned the checks that GEICO had previously sent to him and filed a wrongful death action against Staber that same day.[1]

On October 26, 2004, GEICO contacted Scarmozzino and expressed confusion regarding his October 22nd letter -- GEICO assumed that all conditions for settlement had been satisfied. Scarmozzino informed them that instead of the form provided by GEICO, Scarmozzino wanted an affidavit from Staber, himself, on the form that he prepared and attached to his first letter dated September 20, 2004. (Doc. #40-28.)

On October 29, 2004, Ringers sent a letter to Scarmozzino explaining that GEICO was unaware Scarmozzino required Staber to fill out and submit a specific affidavit declaring that he had no other insurance; GEICO assumed the form it had previously provided was sufficient. Having clarified Scarmozzino's specific request, Ringers contacted Staber and asked him to sign the "Affidavit of No Other Insurance" form prepared by Scarmozzino. Staber signed the form and Ringers enclosed it along with his response letter.

On November 15, 2004, Scarmozzino responded by stating that he intended to proceed with a lawsuit. (Doc. #40-32.) On July 30, 2008, Sunn's estate and Staber resolved the lawsuit by entering into a "Mediated Settlement Agreement" for $1,400,000.00. (Doc.

---

[1] The Court takes judicial notice of the records of the Lee County Clerk of Court in case no. 04-CA-004183.

-8-

#2-2, pp. 19-22.) As part of the agreement, Staber assigned his rights in any cause of action against GEICO to Sunn's estate. (Doc. #2-2, p. 20, ¶4.) Sunn's estate now seeks to collect this judgment from GEICO.

**III.**

An insurer possesses a duty of "good faith" to an insured "to refrain from acting solely on the basis of the[ ] [insurer's] own interest [ ] in settlement." State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 58 (Fla. 1995). Bad faith conduct by an insurer in settling a claim renders the insurer liable for a judgment against an insured in favor of an injured third party "including any amount in excess of the insured's policy limits." 658 So. 2d at 58 (describing this type of claim as a "third-party bad faith action"). The duty of good faith obligates an insurer "to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps [the insured] might take to avoid same." Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla.1980); see also Johnson v. Geico Gen. Ins. Co., 318 F. App'x 847, 851 (11th Cir. 2009) (finding that no obligation exists to accept a settlement offer - or to tender policy limits in advance of a settlement offer - without time for investigation). Accordingly, "'the essence of a third-party bad faith cause of action is to remedy a situation in

which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim.'" Macola v. Gov't Emp. Ins. Co., 953 So. 2d 451, 458 (Fla. 2006) (quoting Cunningham v. Standard Guar. Ins. Co., 630 So. 2d 179, 181 (Fla. 1994)).

Negligent conduct (without more) falls short of "bad faith." DeLaune v. Liberty Mut. Ins. Co., 314 So. 2d 601, 602-03 (Fla. 4th DCA 1975). Furthermore, although a bad faith claim derives from and emphasizes the duty of the insurer to the insured, the conduct of a claimant and the claimant's attorney is relevant to determining the "realistic possibility of settlement." Barry v. Geico Gen. Ins. Co., 938 So. 2d 613, 618 (Fla. 4th DCA 2006).

A bad faith action is susceptible to summary judgment if the plaintiff lacks sufficient evidence of bad faith. See Shin Crest PTE, Ltd. v. AIU Ins. Co., 368 F. App'x 14 (11th Cir. 2010) (finding that the insurer fulfilled the duty to the insured by attempting, albeit unsuccessfully, to obtain for the insured a release from liability); Johnson, 318 F. App'x at 850 (finding that "Florida appellate courts have affirmed summary judgment where the undisputed facts would allow no reasonable jury to conclude the defendant acted in bad faith."); Maldonado v. First Liberty Ins. Corp., 342 F. App'x 485, 488 (11th Cir. 2009)(same).

**IV.**

Plaintiff asserts that GEICO acted in bad faith because it failed to provide plaintiff with the specific "Affidavit of No Other Insurance" form prepared by Scarmozzino and attached to his initial September 20, 2004 letter.[2]  The Court disagrees.

No reasonable jury could find that GEICO acted in bad faith. The law requires GEICO to properly and promptly defend the claim on behalf of its insured - GEICO did just that.  On the first business day following the accident, GEICO obtained a copy of the police report from the Florida Highway Patrol and attempted to contact its insured in order to obtain his statement.  Once GEICO was able to contact Staber, it advised him that they would provide a defense on his behalf and warned him that he may be exposed to liability in excess of his policy limits.  Ten days after the accident occurred, GEICO retained counsel to defend Staber and provided Sunn's estate with a signed and notarized affidavit of coverage, a proposed release, and a check for $10,000, which was the full amount of Staber's bodily injury coverage under the policy.  When Scarmozzino responded with his seven specific demands, GEICO diligently attempted to meet those demands in less than twenty days.

In its October 6th letter, GEICO outlined the actions it had taken in attempting to meet each of Scarmozzino's demands.  With

---

[2] Upon review of the record, it appears that Scarmozzino required his specific form or a form with substantially the same language, signed by Staber.

respect to "Condition No. 6", GEICO stated that it felt it had already satisfied this condition by providing its own form which indicated "None Known" regarding additional forms of insurance. If Scarmozzino felt that GEICO's form was insufficient, this was the time to clarify his request – before expiration of the settlement offer.[3]

Instead, Scarmozzino waited until October 22nd, two days after the settlement offer expired, to inform GEICO that its form was insufficient and that he had filed a lawsuit against its insured. GEICO's immediate response was to contact Staber and request that he sign the specific "Affidavit of No Other Insurance" form provided by Mr. Scarmozzino. GEICO sent Scramozzino the signed form on October 29, 2004, just seven days after learning which specific form he required. Scarmozzino, however, refused to settle the matter and proceeded with a lawsuit, which resulted in a $1,400,00.00 judgment against Staber. Based on the above, the Court finds plaintiff's claim that GEICO acted in bad faith to be unsupported by any material facts.

Accordingly, it is now

**ORDERED:**

1. GEICO's Motion for Summary Judgment (Doc. #40) is **GRANTED**.

---

[3]To the extent plaintiff implies that Scramozzino clarified his request by referencing Staber's "statement" in his October 14th letter, the Court is unpersuaded.

    2. Plaintiff's Partial Motion for Summary Judgment (Doc. #41) is **DENIED**.

    3. The Clerk of the Court shall enter judgment in favor of defendant Geico Casualty Company and against plaintiff Kee K. Kim, who shall take nothing.

    4. The Clerk is further directed to terminate all pending motions and deadlines as moot and close the file.

    **DONE AND ORDERED** at Fort Myers, Florida, this __7th__ day of June, 2011.

                                                       JOHN E. STEELE
                                                       United States District Judge

Copies:
Counsel of record